## RUDOLFO PEREZ V. STATE

No. 26,960. May 19, 1954
Rehearing Denied October 13, 1954
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) October 13, 1954

*Travis Smith,* Corpus Christi, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was convicted for the murder of Manuel Garcia and his punishment was assessed at 32 years in the penitentiary.

On the night of May 12, 1953, officers responding to a call went to the B-Wise Bar in Corpus Christi, operated by George Wise. They there found the deceased Manuel Garcia dead or in a dying condition from gunshot wounds, and also found George Wise and one Guadalupe Lopez, also known as Lupe Perez, Lupe Salizar and Lupe Garza. Wise and the woman Lupe each had bullet wounds. Wise had been shot three times and was slumped over the bar with a recently fired pistol in his hand when the officers arrived. The pistol, which had been taken from appellant after the shooting, had six empty cartridges in it and was still hot.

Lupe had been shot in the leg and she exhibited to the jury several bullet wounds which she had received.

The proof shows, and appellant testified, that he fired the shots, intending to kill the deceased Manuel Garcia and George Wise, but not Lupe. It was his contention that after shooting Garcia and Wise he fired into the men's rest room without knowing that Lupe was there.

It is without dispute that the trouble arose because Lupe, who had been living with appellant for several weeks, had indicated a desire or intention to break off the relationship. She was employed by George Wise at the B-Wise Bar, and appellant was there most of the time on the day in question after she went to work at 4 P.M.

During the afternoon Lupe had informed appellant that she wanted to, was trying to or might break off with him, and

appellant had replied, according to Lupe: "He said 'that I will see what will happen to me after I will get off.' "

Appellant left the bar for a time and when he returned he had changed clothes and, as it afterwards developed, had armed himself with the pistol.

When the time approached for Lupe to get off from her work she arranged for a taxi and attempted to leave by that means. She ran toward the taxi pursued by appellant, and being unable to enter it she ran back into the building and to where her employer Wise was standing at the bar.

Appellant's testimony at this point was substantially as follows: Wise picked up a club and ordered appellant to get out of the place, to which appellant replied that he was not going to leave until he talked to Lupe; Wise told appellant that Lupe was not going with him, and started toward appellant with the club. Appellant backed away until he was close to the door. He observed the deceased, a stranger with whom he had had no conversation, approach him. The deceased told appellant to go on, that he had no business there, to which appellant replied that he was not going and told the deceased not to make another step.

Appellant then produced his pistol and began firing. He testified that he fired at the deceased as he advanced, with the intention of killing him, but did so believing that his life was in danger because the deceased had a hand in his pocket.

After firing two shots into the body of the deceased (the second shot, according to the state's witnesses, being fired while deceased was lying on the floor under a marble table and the first as he was backing away) appellant turned his gun on George Wise and then fired into the rest room which Lupe and some unidentified man had entered.

The state offered the voluntary confession of appellant wherein he admitted the killing but gave a different version of the sequence of events. The confession reads in part as follows:

"I was trying to get my girl out of the bar, her name is Lupe Garza, who has been living with me at the hotel. She was on duty at the bar, she was going to quit and go home with me, when the Mgr. George Wise told me the girl was not going with me. He pick up a club and started after me, I happen to

have my pistol on me and draw it and shot him once or twice. Then a big tall fellow started after me and I shot him twice also, then walk to the back and shot Lupe one time. Then someone took the pistol away from me."

The testimony of the state's witnesses was to the effect that the deceased approached appellant, patted him with his hand, and was backing away when the first shot was fired.

The court submitted the issue of self-defense, and it was resolved against appellant. We find the evidence sufficient to sustain the jury's verdict.

We overrule the contention that the state should not have been permitted to show that appellant shot and injured Lupe and George Wise. The shootings were all a part of the same general transaction, all of which were admissible to show intent, motive and the existence of malice on the part of appellant, without which the state's theory of the killing would have been incomplete.

The case of Davis v. State, 96 Texas Cr. Rep. 93, 258 S.W. 188, cited by the state appears to support this holding. See also Arcos v. State, 120 Texas Cr. Rep. 315, 29 S.W. 2d 395.

The testimony being properly admitted, counsel for the state were properly permitted to comment thereon in their arguments to the jury.

Appellant complains that the trial court failed to instruct the jury on the law of exculpatory statements based upon that part of appellant's confession wherein he said: "Then a big fellow started after me and I shot him twice also." He argues that properly construed, the effect of appellant's confession is that he shot the deceased, who was "a big, tall fellow," when he approached for the purpose of killing appellant or doing him serious bodily harm.

Under the facts here, where appellant had been ordered by the manager in charge to leave the place and had refused to do so, and was approached by a perfect stranger, we cannot follow appellant's contention.

However this may be, appellant testified fully in regard to the killing and his claim of self-defense against an apparent attack of the deceased and the issue was fairly presented in the

court's charge. It was not, therefore, reversible error for the trial court to fail to charge that the claimed exculpatory statement in his confession offered by the state must be disproved. See Casey v. State, 54 Texas Cr. Rep. 584, 113 S.W. 534; Skinner v. State, 134 Texas Cr. Rep. 559, 116 S.W. 2d 710; Treadway v. State, 200 S.W. 2d 199; Branch's Ann. P.C., Sec. 73, p. 45.

We commend counsel for his diligent efforts in behalf of his client whom he has served under appointment of the court.

Finding no reversible error, the judgment is affirmed.

### ON MOTION FOR REHEARING

MORRISON, Judge.

Appellant's earnest and able attorney now complains that we did not discuss his objection to the exhibition to the jury by Lupe Garza of the bullet wounds in her legs. We have re-examined his formal bills of exception and do not find such proof objected to therein. They relate to her entire testimony and do not mention the exhibition of the wounds. There are no informal bills, and therefore the question is not properly presented for review.

We find the record in a comparable condition concerning the proof of the extent of the injuries to George Wise.

Appellant again urges that the trial court erred in failing to charge on the law of exculpatory statements. He would have us consider the statement, "Then a big fellow started after me and I shot him twice," as a complete plea of self defense. This we cannot do. A statement is not exculpatory unless it exculpates. We cannot read into such a sentence all the elements requisite to raise the issue of self defense.

Remaining convinced that we properly decided this case originally, the appellant's motion for rehearing is overruled.